THE LUCKENBACH.[1]

ASKEW v. THE LUCKENBACH.

(District Court, S. D. New York. December 19, 1892.)

NEGLIGENCE—PERSONAL INJURIES—USUAL CONSTRUCTION.
 Libelant, a fireman on a tug, was thrown against the deck house by a
lurch of the vessel, and at the same time, the iron door of the house
swinging to, his fingers were caught near the hinges and cut off. There-
upon he brought this suit, alleging negligent construction of the vessel.
*Held*, that the weight of the evidence showed no negligence in the construc-
tion of the tug. *Held*, further, that not only were the appliances of the tug
in good order, but they were in the exact condition in which they were
when libelant engaged work, and were perfectly known to him, which
fact would bar recovery.

In Admiralty. Libel by John Askew against the steam tug Lucken-
bach for personal injuries. Libel dismissed.

Hyland & Zabriskie, for libelant.
Peter S. Carter, for claimants.

BROWN, District Judge. On the 3d of July, 1892, while the libel-
ant was on duty as fireman on the Luckenbach, which was proceed-
ing eastward a few miles outside of Sandy Hook, in rough weather,
on coming from the fire room to the upper deck, in order to look at
the steam gauge inside of the house, he was, as he says, thrown by
a sudden lurch against the starboard side of the house, where, to save
himself, he caught with his right hand the door casing on the hinge
side. Just at that moment the iron door swung to, and cut off the
ends of his two middle fingers. The libel was filed to recover for the
injury, on the ground of the insufficient and negligent construction of
the tug in not having a railing around the open hatchway near the
gauge, which would afford support in heavy weather; and also that
the fastening of the door was out of order, whereby it was allowed to
close improperly.

There is some evidence tending to show that according to the libel-
ant's admissions to the captain, though these are denied by him, he
was endeavoring to force the door open, and slipped at the time of
the lurch, and thus got his hand upon the jamb of the door.

Upon the other points, however, the libelant's testimony is over-
borne by the weight of testimony, showing that the door in question
on the starboard or weather side was not only required by the general
rule of the tug to be closed in such weather, but that orders to close
it had been repeatedly brought to his knowledge that morning. His
denial of the statements made by the several different witnesses in
that regard, whom I must believe, throws some doubt upon the rest
of his story, as to the way his hand got in the door, though that is
corroborated by one eyewitness.

There is a further difficulty which I am unable to explain, in the
libelant's account of the way in which the door closed, taken in con-

[1]Reported by E. G. Benedict, Esq., of the New York bar.

nection with the inability to open it immediately afterwards. If the skid outside prevented it from opening afterwards, it should have prevented shutting, unless the skid was brought there by water at the very moment the door shut; but in that case if the door was previously fastened back, as the libelant asserts, the water would apparently have prevented the door from shutting. I do not find it necessary, however, to decide that point definitely, because on other grounds, I am satisfied the libelant cannot recover in this case. The weight of evidence is certainly to the effect that the door fastening was in good order. There can be no doubt of this, if the libelant's own statement is true, that the door had not been closed that morning, nor for a week before; and that he had never known it before to close of itself through heavy seas.

The only point remaining concerning negligence is the absence of a guard around the open hatchway, by which the men coming up the ladder from the fire room below might find support. I am not clear, however, that there was not a reasonable provision for so small a house. There was a sufficient guard rail on the bulkhead immediately adjoining the opening, and running two or three feet above it, which gave all the hold needed there to persons coming up. The room was small, and there was a rod within arm's length of a person passing around the opening to go to the starboard side, which would afford any desired support in that direction; no accident had ever occurred there, and there is no evidence that the usual provisions for so small a room were not supplied. According to the evidence, there was not enough space for the necessary work in that room to admit of a rail around the opening such as is seen in the larger house on The E. F. Luckenbach. But aside from this, this accident had no immediate relation to the absence of a guard around the open hatch. If the libelant had fallen down the hatch in consequence of the want of a guard, the absence of the guard might have been said to be the proximate cause of the injury. But instead of falling down the hole, the libelant, according to his own story, on the lurch of the ship, was thrown over the other way to starboard, against the side of the house. This would certainly not have happened had he chosen to support himself by the rod or stanchion to the left, which he could easily have done, if he wished for support, whether he was crossing to starboard, or was looking at the register. It would be mere speculation, therefore, to say that if there had been a guard around the hatch he would have made use of it, and would not have been thrown against the house. The shutting of the door at the moment the libelant's fingers reached the jamb, moreover, was not a natural result of the absence of a guard around the opening. It had no direct connection with it; and it was not a consequence naturally to be expected to result, or in fact resulting, from the absence of a guard; it came from a wholly independent cause that is not, therefore, the proximate cause of the injury. Even if it had been, I should have found great difficulty in allowing any recovery, as the hatchway and all the arrangements of the room were in no respect out of order, but in the exact condition they were in when the libelant engaged work, and were perfectly known to him. The Maharajah, 40 Fed. Rep. 784, affirmed 1 U. S.

App. 20; Railroad Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. Rep. 1044; The Serapis, 51 Fed. Rep. 91.

On the whole I cannot regard the case of the libelant as sufficiently established; and the libel must, therefore, be dismissed.