## CHESAPEAKE & O. RY. CO. v. J. WIX & SONS, Limited.

### No. 4100.

Circuit Court of Appeals, Fourth Circuit.

Jan. 5, 1937.

Meade T. Spicer, Jr., and Walter Leake, both of Richmond, Va. (Leake & Spicer, of Richmond, Va., on the brief), for appellant.

Thomas H. Middleton, of New York City, and Aubrey R. Bowles, Jr., of Richmond, Va. (Hill, Rivkins & Middleton, of New York City, on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and GLENN, District Judge.

GLENN, District Judge.

This is an appeal from a judgment based on a verdict in favor of the appellee returned by a jury in the United States District Court for the Eastern District of Virginia. The defendant is here on exceptions taken to certain rulings by the court during the trial of the case and on the court's refusal of motion to grant a new trial. The facts, briefly stated, are as follows:

The defendant railway company, as one of the adjuncts of its system, had steamship facilities owned and maintained by the defendant at Newport News, Va. On the 22d day of August, 1933 there was delivered to the defendant railroad, at Newport News, by the Hiden Storage & Forwarding Company on behalf of the plaintiff, 237 hogsheads of tobacco in good order and condition, the same being the property of the plaintiffs for shipment to the plaintiffs at London, England, via the railway cars of the defendant to the steamship Cold Harbor. The defendant accepted the delivery of the tobacco of the plaintiff for transshipment to the steamship Cold Harbor at its Newport News terminal and duly issued two bills of lading for the shipment of tobacco. Pursuant to the above undertaking, the defendant railroad transported in nine cars on the 22d of August, 1933, the 237 hogsheads of tobacco to its terminal pier No. 4, where the shipment of tobacco was to be loaded upon the steamship Cold Harbor. Seven of the cars containing the tobacco were placed at pier No. 4 on tracks which were depressed below the level of the pier to such an extent as to make the floor of the cars flush with the deck of the pier—the track was so constructed to facilitate the loading and unloading of cars. The deck was five feet seven and one-quarter inches above the mean high-water line. During the night of August 22, 1933, a "tropical storm" began blowing from the northeast, and by 7 o'clock on the morning of the 23d had reached such intensity that the water level at defendant's pier at Newport News had been forced to an unprecedented height, to wit, some six feet three inches above the mean high-water level. Shortly after 7 o'clock on the morning of August 23d, before any damage had been done, the agents of the defendant railroad realized the threatened danger and attempted to have the cars withdrawn to a higher place of safety. The execution of this plan, however, consumed about an hour; in the meantime, the tide had risen further, seeping into the cars and wetting the tobacco in the hogsheads to a height of six inches. It is for this wetting and resulting damage

to the tobacco that the plaintiffs were awarded damages in the trial court.

The defendant's main defense was that the storm was of such an unusual, unforeseeable, and unprecedented nature as to excuse them from their liability, in that the sole, proximate cause of the damage to the shipment was an "Act of God" within the meaning of the law without any negligence of the defendant contributing thereto.

Plaintiffs take the position that, conceding the unusual and unprecedented storm would in law be considered an "Act of God," still, by the exercise of reasonable prudence and diligence in observing and heeding storm warnings and maintaining adequate watch facilities. The defendant would not have been unprepared to meet the emergency which arose. The plaintiffs also take the position that the defendant, by the exercise of reasonable judgment and efficient handling of the situation after the danger actually became apparent, the tobacco could easily have been saved from damage.

Fairly construed, the testimony reveals the following facts: On August 22, 1933, storm signals were raised at Norfolk and Newport News. On the same day the United States meteorologist was cautioned to "advise all interests," which forecast a storm of great intensity. These warnings were published in newspapers and were broadcast over the radio station at Norfolk. No additional precaution was taken by the defendant railroad in spite of these warnings—the reason given being that never before had the tide endangered any of its piers. So the only lookout kept during the night of August 22, 1933, was one regular night watchman charged with the duty of watching over three piers, and who required two hours to make his rounds. Apparently this watchman did not feel that the danger from the storm justified his making any report that night—at any rate, he did not do so. The meteorologist of the United States Weather Bureau testified that storms from the northeast caused higher tides than storms from any other direction, and the warnings on August 22d had specified that the storm would be a "Northeaster." The testimony showed that it was a well-established fact that storms from the northeast caused the highest tides. Testimony showed further that only a change in the barometric pressure and a corresponding change in the wind direction would make the tide subside. The storm with which we are concerned continued and, if anything, had increased in intensity by the next morning. One Baker, appellant's pier foreman, arrived at pier No. 4 about 6:50 the morning of August 23d. At the time of his arrival, Baker testified, the water was only sixteen or seventeen inches below the floor of the pier, although it normally would have been only one foot and two or three inches above the mean low water, instead it was actually seven feet six inches above the mean low water, or about six feet higher than normal. The high tide on that day was not due until 10:30 in the morning, and the wind was still blowing directly from the northeast. Baker first ascertained from the records in the upstairs office in the pier that the cars contained tobacco which he knew was a commodity peculiarly subject to water damage. According to Baker's own testimony, it was around 7:15 before he called the yard master for an engine to pull the cars off the depressed tracks to higher ground. According to the testimony of the defendant's witnesses, it was some twenty-seven minutes later that the engine arrived at pier No. 4. The engine then coupled on to the cars containing appellee's tobacco but was unable to move them from the depressed tracks. Another engine was sent for and the cars were finally dragged from the depressed tracks but before that was accomplished the water had risen high enough within the cars to wet the tobacco in the hogsheads some six inches from the bottom.

We are of the opinion that the trial court was entirely correct in refusing the request of the defendant for a directed verdict after completion of all testimony and very properly submitted the controverted issues as to the negligence of defendant to the jury. In Garrison v. United States (C.C.A.) 62 F.(2d) 41, 42, the court says: "There seems to be some confusion on the part of counsel as to the difference between the duty to direct a verdict and the duty to grant a new trial after verdict; and the contention is frequently made that the judge should direct a verdict whenever the evidence is such that he would be justified in setting the verdict aside. The distinction, however, is clear. Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guar-

anty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility." See, also, Madray v. United States (C.C.A.4) 55 F.(2d) 552.

The defendant has argued vigorously that no showing of negligence has been made out, that the only testimony adduced on trial was that of its own witnesses, who testified that they did everything reasonably possible under the circumstances to save the plaintiffs harmless and that this testimony went uncontradicted. We think there is no merit in this contention, however, as it is well settled that, where the issue is one of negligence (admittedly negligence is the only issue here), the question is one of fact and should be submitted to the jury, even though the testimony is undisputed. In Richmond & D. Railroad Co. v. Powers, 149 U.S. 43, at page 45, 13 S.Ct. 748, 749, 37 L.Ed. 642, Mr. Justice Brewer, delivering the opinion of the Supreme Court, said: "It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty rises from a conflict in the testimony, or because, *the facts being undisputed, fair-minded men will honestly draw different conclusions from them.* Sioux City & P. Railroad Co. v. Stout, 17 Wall. 657 [21 L.Ed. 745]; Washington & Georgetown Railroad v. McDade, 135 U.S. 554, 10 S.Ct. 1044 [34 L.Ed. 235]; Delaware, L. & W. Railroad Co. v. Converse, 139 U.S. 469, 11 S.Ct. 569 [35 L.Ed. 213]." (Italics ours.) See, also, American Locomotive Co. v. Thornton (C.C.A.4) 259 F. 405.

Considerable testimony was introduced on trial and much argument had on appeal as to whether, by the exercise of due diligence and reasonable persistence, the train engineer with the assistance which he had could have withdrawn the tobacco laden cars from the depressed tracks in time to have avoided damage to the contents. Under the doctrine of Holladay v. Kennard, 12 Wall.(79 U.S.) 254, 257, 20 L.Ed. 390, the judge below very properly submitted the above question to the jury to decide whether the defendant acted as "would a cool, self-possessed, prudent, careful man have done with his own property under the same circumstances." A well-considered case substantiating the position taken by the trial judge is that of Ferguson v. Southern Railway, 91 S.C. 61, 74 S.E. 129, 131; there the court said: "It requires no citation of authority to sustain the proposition that, after a carrier has discovered, or by the exercise of reasonable prudence and diligence should have discovered, that goods in his possession are subject to the perils of an unprecedented flood, or other vis major, it is his duty to exercise reasonable care and diligence to save them from damage or loss."

A case cited by plaintiffs which the court thinks is particularly applicable is that of Memphis & C. Railway Co. v. Reeves, 77 U.S.(10 Wall.) 176, 189, 190, 19 L.Ed. 909, saying: "But, even if you believe from the evidence that the act of God, that is the tide, was the immediate cause of the damage, the plaintiff is still entitled to recover notwithstanding such act of God, if the jury further believe from the evidence that any negligence on the part of the defendant concurred with the act of God, or contributed in any degree to cause the damage, and the burden of proving such negligence, if any, is on the plaintiff." (Charge, 92.)

As counsel for plaintiffs argued so effectively, one might easily conclude from the testimony that the agents of the defendant sat idly by watching the water gradually engulf the piers, waiting for the tide to reach such an unprecedented high level as to come constructively within the definition of an "Act of God" and thus excuse their master from liability.

This court would be inclined to go further and say that the defendant was negligent as a matter of law in its failure to maintain a more adequate system for weather observation in order to safeguard the property of others which had been intrusted to its custody for transporting and transferring to steamship lines. However, there is no necessity, for a correct decision of this case, to lay down the standard of care which would be required on this phase of the case. We are convinced that the trial judge correctly submitted the case to the jury and that he correctly charged the law applicable. As no prejudicial error is shown, the judgment below is affirmed.

Affirmed.