John L. LEWIS, Henry O. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund, Plaintiffs,

v.

Glen C. KEPPLE and Henry P. Jarvis, individually and trading as J and K Coal Company, a partnership, Defendants.

Civ. A. No. 15303.

United States District Court
W. D. Pennsylvania.

July 28, 1960.

Alexander Unkovic, Kountz, Fry & Meyer, Pittsburgh, Pa., Charles L. Widman, Washington, D. C., for plaintiffs.

J. Lee Miller, Miller & Miller, Pittsburgh, Pa., for defendants.

McILVAINE, District Judge.

Plaintiffs, as Trustees of the United Mine Workers of America Welfare and Retirement Fund of 1950 (hereinafter referred to as the "Fund"), filed a complaint against Glen C. Kepple and Henry P. Jarvis, individually and trading as J and K Coal Company, a partnership. The complaint alleged that the de-

fendants were engaged in the operation of certain coal mines, that the defendants and the United Mine Workers of America executed the National Bituminous Coal Wage Agreement of 1950, the National Bituminous Coal Wage Agreement of 1950 as amended January 18, 1951, the National Bituminous Coal Wage Agreement of 1950 as amended September 29, 1952, and the National Bituminous Coal Wage Agreement of 1950 as amended September 1, 1955, that under the terms of those agreements the defendants were required to pay to the Fund the sum of 30 cents for each ton of coal produced for use or sale by the defendants prior to September 30, 1952, and 40 cents per ton for each ton of coal produced for use or sale by the defendant after September 30, 1952, through December 31, 1955. Defendants filed an answer and an amended answer averring that the first three agreements referred to above were not signed by the partners nor by one authorized to sign. Defendants admitted the signing of the 1955 amendment. Defendants further denied in the answer the quantity of coal mined. Defendants also filed a counterclaim and an amendment to counterclaim and demanded judgment for monies paid on account of royalties in the amount of $17,874.78.

The case proceeded to jury trial. The plaintiffs in their case in chief made claim for coal royalties due the United Mine Workers of America Welfare and Retirement Fund from the defendants for the period August 31, 1951, through December 31, 1955. The plaintiffs relied upon four certain contracts referred to above. The contracts provide for the period prior to September 30, 1952, that the defendants pay 30 cents a ton for each ton of coal produced for use or sale and after said date 40 cents a ton for each ton of coal produced for use or sale by the defendants. The defendants in their testimony maintain that they did not sign the 1950 agreement, the 1951 or 1952 amendments, but that these were signed by one Palmer, an employee not in a supervisory capacity and with no authority to execute the contracts. The

defendants stated that they had no knowledge of the said contracts until shortly before the bringing of this suit. The defendants through their accountant, Marsh, offered evidence to show payments to the Fund of $20,664.36. The plaintiffs maintained at the trial that the payments by defendants ratified the action of Palmer in signing the contracts and that the defendants did not pay the balance of the money due and owing in the amount of $19,361.25 and, therefore, breached the contract.

The defendants testified that these payments were made under a mistaken belief that a contract that they executed in 1948 with the United Mine Workers was still in effect. The defendants testified that they were never given a copy of this contract, and that they could not get the original from the United Mine Workers as the original was no longer in existence. The defendants did produce what they said was a copy of the type of contract they executed, and which was furnished by an official of the United Mine Workers. This was admitted into evidence over plaintiffs' objection. However, it showed that it terminated on June 30, 1949. The plaintiffs took the position that there never was a 1948 contract.

The jury found that payments were made to the plaintiff, but they were paid by the defendants under a mistaken belief of fact, but that the plaintiffs had so changed their position that defendants were not entitled to restitution.

The plaintiffs now ask this Court to reopen the judgment and direct a verdict in their favor, or in the alternative to grant them a new trial.

Turning first to plaintiffs' contention that a verdict should be directed in their favor, to have done this at the trial or to do this now would mean that we would be taking the case away from the jury. This could be done

"Where plaintiff is clearly entitled to recover and no matter affecting his claim is left in doubt, a verdict for him is properly directed,

"where no evidence is introduced to disprove his prima facie case." Vol. 9, Cyclopedia of Federal Procedure, § 31.71, p. 340.

"To justify withdrawing a case from the jury, the conclusion must follow as a matter of law that no recovery can be had on any view which can properly be taken of the facts which the evidence tends to prove, and there must be no evidence before the jury, either strong or weak, tending to prove the issue on the part of the one against whom the direction is requested." Vol. 9, Cyclopedia of Federal Procedure, § 31.66, p. 328.

The contracts on which the plaintiffs rely were not executed by either partner or by an agent who was authorized to sign the contracts. They were signd by a handyman employed by defendants. The crucial issue was whether the defendants ever ratified these contracts. The jury was properly instructed on the principles of ratification. The defendants admitted that they made payments, but they contended these were made under a mistaken belief of fact. The jury believed the defendants. We might not have accepted this defense had the Court been the fact-finder, however,

"The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572 [10 S.Ct. 1044, 1049, 34 L.Ed. 235]; Tiller v. Atlantic Coast Line R. Co., supra, [318 U.S. 54] 68 [63 S.Ct. 444, 87 L.Ed. 610]; Bailey v. Central Vermont Ry., 319 U.S.

350, 353, 354 [63 S.Ct. 1062, 1064, 87 L.Ed. 1444]. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria & P. U. Ry. Co., [1944] 321 U.S. 29, 35 [64 S.Ct. 409, 412, 88 L.Ed. 520].

There was evidence to support the jury's verdict and, therefore, plaintiffs' motion for a directed verdict or for judgment n. o. v. must be denied.

■ In regard to plaintiffs' motion for a new trial, Courts will not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done. Vol. 10, Cyclopedia of Federal Procedure, § 34.04, p. 69.

In Magee v. General Motors Corp., 3 Cir., 213 F.2d 899, the Court of Appeals for this circuit pointed out the role of the trial judge in passing on a motion for judgment n. o. v. and his role in deciding a motion for a new trial. We have found that in the former that there was a rational basis for the jury's verdict. In regard to its motion for a new trial the trial judge must evaluate all significant evidence and decide in the exercise of his own best judgment whether the jury has so disregarded the clear weight of the credible evidence that a new trial is necessary to prevent injustice. Zegan v. Central Railroad Company of New Jersey, 3 Cir., 1959, 266 F.2d 101.

■ This brings us to defendants' principal contention. The defense to ratification by the defendants was that the payments they made to the plaintiffs were made by mistake. They thought that a 1948 contract was still in effect. They offered into evidence secondary evidence of this contract, they did not have an original copy, and this contract pro-

888

vided that it would terminate in 1949. They testified to what they believed. They told what the circumstances were under which they paid. Their testimony in effect showed what was in their minds.

Plaintiffs contention appears to be that this testimony and the copy of a contract is inadmissible as it violates the parol evidence rule, and a proper foundation for introduction of secondary evidence was not laid.

If this were a suit based on the 1948 contract, and rights under that contract were sought to be enforced, there might be something to plaintiffs' contention. However, there was no attempt here to alter, vary or contradict the terms of any written contract. See Brown, Pa.Evidence, p. 223, et seq.

"The parol evidence rule has no application where the writing is not the basis of the action, and is only collaterally involved." Brown, Pa.Evidence, p. 237. Here the 1948 contract was not the basis of the action, and the parol evidence rule is clearly inapplicable.

■ Plaintiffs also contend that the contract about which the defendants testified should not have been admitted into evidence. With this contention we cannot agree. The nature of the best evidence rule and its effect is succinctly set forth in Brown, Pa.Evidence, p. 201, et seq. This rule provides that, "When the contents of a document are in issue, the document itself is the primary evidence, and all other evidence is secondary." The rule provides that, " * * * secondary evidence of the contents of a document cannot be introduced into evidence unless the absence of the original has been accounted for." Brown, supra, p. 202. Fundamentally, the contents of the 1948 contract was not in dispute. The defendants contended that they executed a contract in 1948; the plaintiffs contended that there never was a 1948 contract executed. Its contents were not disputed; its existence was. The offer of a copy did not prove its existence. Plaintiffs' testimony and defendants' testimony was that there was no copy of the contract existing. Secondary evidence

was then admissible. Brown, supra, p. 203, as evidence of what the contract contained if there was a contract.

This evidence about the contract was evidence that would tend to support defendants' contention that it paid, thinking it was paying on a 1948 contract. The admission of the evidence about it and the copy of it violated no specific rule of exclusion.

The question in issue was did the defendants ratify the contracts on which plaintiff based its suit? This testimony only went to the issue of ratification. Frankly we do not think it was of much weight, since by its terms it expired before the defendants ever paid any payments. What effect this expired contract had on the intent of the defendants in making the payments was for the jury. The evidence had to be admitted, and in reality the admission of the 1948 contract was more favorable to the plaintiffs' position than the defendants'.

Even if the admission of this testimony were error, and we do not think that it was, in order to justify a new trial the error must be prejudicial. The admission of the copy of the 1948 contract did not turn the scales in defendants' favor. See Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.; Vol. 14, Cyclopedia of Federal Procedure, § 68.59.

■ The plaintiffs in addition seek a new trial on the grounds of after discovered evidence. This evidence was that it sent the defendants a form letter advising them of their obligation to pay royalties to the Fund. However, this was evidence that was in plaintiffs' files at all times and which it simply failed to discover although it was always available to them, and plaintiffs admit this. This evidence could have been produced at the trial by the exercise of reasonable diligence. The mere fact that plaintiffs' employees did not discover this and bring it to the attention of plaintiffs' attorney is not a sufficient reason in law to grant a new trial. Furthermore, we do not think that this evidence would change the result of the trial. Vol. 10, Cyclopedia of Federal Procedure, § 34.05.

We feel that the plaintiffs had a fair trial. They were represented by competent counsel, who very capably represented their interests. The jury simply decided in favor of the defendants. It was a case for the jury to decide, and no sufficient reason has been shown to disturb the jury's findings.