147 So.2d 157 (1962)
The HOME INSURANCE COMPANY, Appellant,
v.
H.E. WIGGINS, Doing Business As Wiggins Men & Boys' Shop, Appellee.
The TRAVELERS FIRE INSURANCE COMPANY, Appellant,
v.
H.E. WIGGINS, Doing Business As Wiggins Men & Boys' Shop, Appellee.
Nos. D-274 and D-275.
District Court of Appeal of Florida. First District.
November 29, 1962.
Rehearing Denied December 27, 1962.
*158 Beggs, Lane, Daniel, Middlebrooks & Gaines, Pensacola, for appellants.
James E. Hertz, of Fisher & Hepner, Pensacola, for appellee.
WIGGINTON, Judge.
This appeal is from a final judgment entered upon a jury's verdict awarding appellee the proceeds of two fire insurance policies covering a stock of goods, furniture and fixtures owned by appellee and located in a store operated by him. The action on the insurance policies was defended by appellants on the ground that the fire which destroyed appellee's property was wilfully kindled by appellee with intent to defraud appellants.
The sole point on appeal touching the merits of this case concerns a ruling by the trial judge which granted in part and denied in part appellant's objection to a portion of the testimony given by appellee's witness, Ralph Polise. The appeal presents no question with respect to the weight or sufficiency of the evidence to support the judgment on the crucial issues of liability or damages.
At the trial appellee called Polise as an expert witness on the nature and origin of fires. After stating his qualifications as an expert, the witness was asked whether he had sufficient knowledge of the conditions which existed in the area where the fire originated to express an opinion as to its cause. Appellant's objection to this question was overruled whereupon the witness answered: "Assuming the door was closed and the building, all the widows shut on the east side of the house and the windows already boarded up or bricked up on the front *159 of the building, if there was any event of spontaneous combustion would be very low, in my opinion." The witness then proceeded to elaborate on various conditions which would likely cause a fire to start by spontaneous combustion. The trial judge evidently construed this testimony as an expression of opinion by the witness that the fire in question could have or did originate by spontaneous combustion. After the witness had completed his testimony, the trial judge reconsidered his ruling on the admissibility of this part of the witness' testimony, and of his own motion stated to the jury that he had erroneously overruled appellant's motion to strike that part of the witness' testimony in which he expressed the opinion that the fire was caused by spontaneous combustion. The questioned testimony was then stricken and the jury was instructed to wholly disregard that part of the witness' statement which expressed such opinion.
Appellants contend that the trial court committed error in the first instance when over their objection he permitted the witness to express an opinion regarding the origin of the fire, which error was not cured by the court's later instructions to the jury to disregard such testimony. With this contention we cannot agree. The error, if any, was cured by the court's subsequent ruling and could not be said to have deprived appellant of a fair trial.
The witness Polise was also permitted over the objection of appellants to testify that a cardboard box placed on an energized electric hot plate would catch fire and commence to burn within a period of thirty seconds. Appellants contend that the admission of this testimony was erroneous for the reason that the witness had not demonstrated sufficient qualifications to express an expert opinion on this subject. It is well established in this state that the trial court has the initial responsibility of determining the qualifications and range of subjects on which an expert witness may be allowed to testify, and his determination will not be disturbed on appeal absent a clear showing of an abuse of discretion.[1] We find no demonstration by the record which indicates that the trial judge abused his discretion in determining that the witness was qualified to express the opinion to which objection was made. Even should it be considered that the admission of this testimony was erroneous, from the very nature of the testimony itself the error would be harmless and not sufficient justification for reversal of the judgment appealed. We consider the remaining point on appeal to be without substantial merit.
Reversible error not being made to appear, the judgment is affirmed.
CARROLL, DONALD K., C.J., concurs.
RAWLS, J., dissents.
RAWLS, Judge (dissenting).
As stated in the majority opinion, each of the appellants had issued a fire insurance policy to Wiggins covering certain contents of stock, furniture and fixtures in his place of business. A fire occurred in Wiggins' store resulting in considerable loss, the amount of same being stipulated between the parties. Wiggins made demand on the insurance companies for payment of his claim and upon said claim being denied, he instituted this suit. The insurance companies defended on the grounds that the fire was wilfully kindled by Wiggins with intent to defraud the insurers. This defense was predicated upon the theory that Wiggins piled a group of cardboard boxes on an electric hot plate located in the "upstairs" part of the store and intentionally turned on the electric switch to start the fire.
Wiggins' testimony, which was corroborated, as to his activities during the day of the fire revealed among other things that he *160 waxed and polished the floor of the store during the morning; he was absent from the store from approximately 1:15 to 4:30 in the afternoon; he was upstairs from approximately 4:30 until 5:00, the primary purpose being to close a door which had been opened for ventilation; he was outside the store from around 5:00 until 5:45 talking to a neighboring store operator; he went back into the store around 5:45 where he talked to his employee and her husband until 6:00 P.M., at which time he turned the lights off in the store and followed his employee and her husband out of the store; immediately after locking the store, he and one of his brother's employees drove a few blocks where the employee got out of the car, and he drove directly home; upon arriving home he received a telephone call to the effect that his store was on fire. Wiggins also testified that the upstairs of the store had sheet metal nailed over the windows and that the door was the only source of ventilation. The purpose of this testimony, linked with the testimony of the witness Polise, which is discussed later, was to negate the energizing of the hot plate by Wiggins
The insurance companies defended primarily upon the following evidence: that Wiggins voluntarily submitted to a polygraph examination two days after the fire and at the conclusion of same Wiggins admitted to the examiner that he had rigged a hot plate on a table, piled papers and boxes all around it, and just before leaving the store, flipped the switch to turn on the hot plate and cause the fire; that upon leaving the polygraph room, Wiggins repeated the same admission and discussed the details of the fire at length with the polygraph operator, his assistant, a captain and an inspector of the Pensacola Fire Department. From the Pensacola Police Department, Wiggins voluntarily drove his automobile to the office of the County Solicitor and repeated his admission of starting the fire to the County Solicitor and his special investigator.
To counteract the insurer's defense, Wiggins testified that he did not burn his store; did not know whether he confessed to starting the fire because during the period of the alleged admissions against interest, he was under the influence of extensive medication; and although he could recall events before and after making the alleged admissions, he did not remember anything about the polygraph test or making the admissions.
It is against this background that appellants' primary point for reversal, viz.:
Appellants are entitled to a new trial on account of the admission of the opinion testimony of the witness Polise must be considered.
During the course of the trial in an effort to show a cause for the fire inconsistent with the alleged admissions, Wiggins produced witness Rudolph Polise and attempted to qualify him as an expert witness by showing that: Polise was a civil service employee with the classification of power plant controlman; he held the rank of Assistant Fire Chief of the West Pensacola Fire Department; and had received the Women's Auxiliary Trophy for attending 131 fires in 1959. In a further effort to qualify Polise as an expert witness, the following colloquy took place on direct examination by plaintiff's counsel:
"Q. And in participating in the volunteer fire department organization have you purposely made studies about fires?
"A. Well, all of our members go through a training period.
"Q. Have you continued on your education?
"A. Yes, sir, we have. We receive diplomas from the Florida State Firemen's Association.
"Q. At any of these fires are you often called on to attempt to determine what caused the fire?
"A. Whenever we have any doubt as to whether there is any arson on it, like maybe we can figure it looks suspicious, you might find *161 a pile of lumber in a clothes closet and you know it ignited, you know it for a fact but still we have a fire marshal here, Mr. Williamson. We contact him and he comes out and we assist him in the investigation."
At this stage, defendant's counsel objected to the witness testifying as to the causation of the fire on the ground that his qualifications went to extinguishing fires and not to determining the cause of fires. The trial judge overruled the objection and Polise testified at some length as to spontaneous combustion being one of the theories for the starting of a fire without ever testifying directly that in his opinion the fire under consideration resulted from the theory of spontaneous combustion. At this point the following transpired:
"Q. (Wiggins' Counsel): All right, sir, Mr. Polise, if you took a hot plate and turned it on and piled pasteboard boxes on top of it, cardboard, in your opinion how long would it take for the cardboard boxes to flare up?"
Over the strenuous objection of defendant, which was overruled, the witness testified viz.:
"Q. I ask you, if you took a hot plate and turned it on and piled cardboard boxes on top of it, in your opinion how long would it take for the cardboard boxes to ignite and start flaming?
"A. Long enough for the top of the hot plate to get the paper hot enough. I would say about thirty seconds.
"Q. And you would have an immediate flame, would you not?
"A. Yes; sir."
The trial judge denied defendant's motion to strike all of Polise's testimony, but after hearing the testimony of two other witnesses, stated to the jury that he had erroneously permitted the testimony of the witness Polise in that this witness's opinion was based on previous experience and not on any concrete or physical facts at the scene. As I view it, the trial judge found that a proper predicate had not been laid for the admission of the opinion testimony volunteered by Polise, and to such proposition, I agree. However, the trial judge went further and instructed the jury:
"He [Polise] testified over the objection of the defense that in his opinion spontaneous combustion was the cause of the fire. The Court erroneously permitted this evidence or this testimony to go into evidence and erroneously denied the defendants' motion to strike the testimony, so at this time the Court sustains the defendants' objection and the Court instructs you to wholly disregard that portion of the witness Polise's testimony which stated in his opinion what the cause of the fire was."
Consequently, at this stage of the cause, a major issue for the jury was its determination of the cause of the fire. Polise had expressed his opinion about the elements necessary to start a fire, the factors requisite for a fire to start as a result of spontaneous combustion, how long it would require paper to start burning after being placed on an energized electrical hot plate, and this testimony was adduced as the trial judge later decided, without the laying of a proper foundation. Nonetheless, the trial judge instructed the jury to disregard Polise's testimony that spontaneous combustion was the cause of the fire  and yet Polise had not so testified. The trial judge also had found in the absence of the jury that he had erroneously permitted all of Polise's testimony; however, he did not attempt to cure the other damaging testimony given by Polise by proper instruction to the jury.
In Throckmorton v. Holt[1] the Supreme Court of the United States recognized the *162 principle applicable to the facts in this cause when it stated on page 567 of 180 U.S. on page 480 of 21 S.Ct.:
"The general rule is that if evidence which may have been taken in the course of a trial be withdrawn from the consideration of the jury by the direction of the presiding judge, that such direction cures any error which may have been committed by its introduction. Pennsylvania Co. v. Roy, 102 U.S. 451, 452, 26 L.ed. [141,] 142; Hopt v. Utah, 120 U.S. 430, 438, 30 L.Ed. 708, 711, 7 Sup.Ct.Rep. 614. But yet there may be instances where such a strong impression has been made upon the minds of the jury by illegal and improper testimony, that its subsequent withdrawal will not remove the effect caused by its admission, and in that case the general objection may avail on appeal or writ of error. This was stated by Mr. Justice Field in Hopt v. Utah, 120 U.S. 430, 30 L.Ed. 708, 7 Sup.Ct. Rep. 614. And see Waldron v. Waldron, 156 U.S. 361, 383, 39 L.Ed. 453, 459, 15 Sup.Ct.Rep. 383.
"There may also be a defect in the language of the attempted withdrawal, whether it was sufficiently definite to clearly identify the portion to be withdrawn. This evidence was regarded upon the trial as of considerable importance."
Likewise, this jurisdiction has recognized exceptions to the general rule in Perper v. Edell.[2] Mr. Justice Roberts, speaking for the Court, succinctly stated the controlling principle to the facts in this cause when he said on page 80 of 44 So.2d:
"We conceive the rule to be that, if the introduction of the evidence tends in actual operation to produce a confusion in the minds of the jurors in excess of the legitimate probative effect of such evidence  it tends to obscure rather than illuminate the true issue before the jury  then such evidence should be excluded. Wigmore on Evidence, Third Edition, Section 904; 31 C.J.S., Evidence, § 159, page 869; Atlantic Coast Line R. Co. v. Campbell, 104 Fla. 274, 139 So. 886."
I am convinced that the transactions in the trial court pertaining to Polise's testimony constituted error. As stated in Louisville & N.R. Company v. Collinsworth:[3] "Where improper evidence has been admitted, the court should exclude it in express terms, and it is not enough to do so by implication." The jury was confronted with the testimony of this opinion witness which the trial judge subsequently found was not admissible; that such determination is within the province of the trial judge is an elementary principle of law.[4] However, the trial judge in attempting to purge the jury's minds of the inadmissible testimony misstated the matter to which the witness had testified and failed to instruct the jury to exclude material portions of the witness's testimony which the trial judge had previously determined to be inadmissible.
Considering the close case of contested fact presented to the jury, I do not see how this Court can say that the overall proceedings had no effect upon the jury. Therefore, I would hold in exceptional circumstances, such as found in this cause, the erroneous admission of the opinion evidence was reversible error even though the trial court attempted to cure the defect by an improper instruction.
I, therefore, dissent.
NOTES
[1] Krohne v. Orlando Farming Corp. (Fla.App. 1958), 102 So.2d 399.
[1] Throckmorton v. Holt, 180 U.S. 552, 568, 21 S.Ct. 474, 45 L.Ed. 663 (1901).
[2] Perper v. Edell, 44 So.2d 78 (Fla. 1949).
[3] Louisville & N.R. Co. v. Collinsworth, 45 Fla. 403, 33 So. 513, 514 (1903).
[4] Parker v. Perfection Cooperative Dairies, 102 So.2d 645 (Fla.App. 1958).