Antoinette MONTESANO, Adm'x of the Estate of Frank Montesano, deceased, Plaintiff,

v.

PATENT SCAFFOLDING COMPANY, Inc., a corporation, Defendant and Third-Party Plaintiff,

v.

Charles COST and Anthony Cost, t/d/b/a Cost Brothers, Third-Party Defendants,

v.

H–M CONSTRUCTION COMPANY, Inc., Third-Party Defendant and Third-Party Plaintiff,

v.

MESTA MACHINE COMPANY, Third-Party Defendant.

Civ. A. No. 17789.

United States District Court W. D. Pennsylvania.

Dec. 20, 1962.

Bruce Martin, Pittsburgh, Pa., for Patent Scaffolding.

John Feeney, Pittsburgh, Pa., for A. Montesano.

W. Arch Irvin, Jr., Pittsburgh, Pa., for third party defendants Charles and Anthony Cost.

Gary F. Sharlock, Pittsburgh, Pa., for H-M Construction Co.

Henry E. Rea, Jr., Pittsburgh, Pa., for Mesta Machine.

McILVAINE, District Judge.

In this case after the jury found a verdict in the plaintiff's favor, the de-

fendant has asked the Court to grant a motion for judgment in accordance with its motion for a directed verdict, or in the alternative to grant it a new trial. The third party defendant has filed a motion for a new trial. The consideration of these motions is now before the Court.

Viewing the facts in the light most favorable to the plaintiff and to the verdict, it appears that plaintiff's decedent was a forty-three year old bricklayer employed by the third party defendant, Cost Brothers. At the time of the accident out of which this litigation grew, the plaintiff's decedent was working for Cost Brothers on a job at the Mesta Machine Company plant. He along with several other co-workers had been engaged in the erection of brickwork on the outside of a building. This work was being done from a scaffold that had been erected beside the building. The scaffold had been built to a height of approximately fifty feet, and at the top of the scaffolding between the scaffold and the building were hung sidewall brackets. Planks were placed on top of the scaffolding and the brackets to form a platform upon which the men could work.

It appears that the decedent, Frank Montesano, was working at the extreme end of the platform and was standing over or almost over one of the brackets. The decedent along with other workers had been engaged in placing parapet stone on the roof, and at the time of the accident they were putting the last stone in place. The other workers, a Mr. Champ and a Mr. Mastrangelo, handed a stone weighing approximately two hundred pounds to the decedent and a co-worker, and as this stone was handed to them the entire platform suddenly gave way and fell to the ground. The jury could find that the planks did not break nor did the decedent and the co-worker drop the stone on the platform prior to the collapse. The decedent and his co-worker met their death as a result of the fall.

The bracket in question was introduced into evidence, and it showed that the clamp or hook had been bent. The theory was that the brackets when placed on the scaffolding appeared to be in good condition and were properly installed. There was no question that the defendants manufactured this bracket and rented it to Cost Brothers.

There was testimony from a registered professional engineer who gave his opinion that the bracket was of an unsafe design for use by bricklayers or stone masons at a height of fifty feet above the ground because the design was of such a manner that it would become partially or completely dislodged by normal impact shock.

The theory under which plaintiff's counsel tried this case was that of a chattel made under a dangerous plan or design as set forth in Section 398 of the Restatement of the Law of Torts, as well as Section 388 of the Restatement of the Law of Torts. It was not seriously contested in this case by either party that these principles of law were not applicable to this case.

Voluminous briefs have been filed by all parties to this litigation and extensive arguments have been held, and if we are to comment on each particular argument and contention of each party our opinion would almost fill a volume of the Federal Supplement. We think it more appropriate if we could go to what we judge to be the crux of the defendant's argument and discuss it.

The crux of the defendant's argument was set forth when he took an exception to the Court's charge where the defendant urged that even if the jury would find that the bracket in question was manufactured under a dangerous design, nevertheless, there could be no recovery against the defendant if Cost, the decedent's employer and the one who leased the brackets in question from defendant, knew, or if the defendant had no reason to believe that Cost would not know the full measure of the bracket's dangerous design and characteristics. He urged that if Cost knew of the bracket's dangerous design then the jury

should be instructed that they should find in favor of the defendant.

At the time this Court instructed the jury it considered this contention of the defendant and rejected it as it is not supported by reason or authority. After consideration of the briefs and arguments of counsel for defendant, we still reject that argument. Very basically, if the defendant's contentions were accepted, Sections 395 and 398 of the Restatement of the Law of Torts would be meaningless words.

The defendant contends that merely giving the knowledge to Cost or Cost's actual knowledge would be sufficient to insulate it from liability in this case. The effective warning given to third persons is discussed in Comment (1) to the Restatement of the Law of Torts, Section 388. The comments contained therein clearly show that a supplier of chattels where the risk of harm to the actual user of the chattel, Montesano in this case, is great, then the supplier is required to go further than merely to tell the lessee of the chattel such as Cost of the dangerous character of the article. If he fails to exercise reasonable care under the circumstances, if the information is not brought home to those whom the supplier expects to use the chattel, he is subject to liability. The jury in this case was instructed on the standard of reasonable care, and on the requirements of Section 388. They applied the instructions to the facts, and reached a verdict which is supported by the evidence.

In considering defendant's motion for a directed verdict, this Court has heretofore said that:

" 'To justify withdrawing a case from the jury, the conclusion must follow as a matter of law that no recovery can be had on any view which can properly be taken of the facts which the evidence tends to prove, and there must be no evidence before the jury, either strong or weak, tending to prove the issue on the part of the one against whom the direction is requested.' "

We further stated in that case:

" 'The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572 [10 S.Ct. 1044, 1049, 34 L.Ed. 235]; Tiller v. Atlantic Coast Line R. Co., supra, [318 U.S. 54] 68 [63 S.Ct. 444, 87 L.Ed. 610]; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 354 [63 S.Ct. 1062, 1064, 87 L.Ed. 1444]. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' Tennant v. Peoria & P. U. Ry. Co., [1944] 321 U.S. 29, 35 [64 S.Ct. 409, 412, 88 L.Ed. 520]." Lewis v. Kepple, 185 F.Supp. 884, 887 (W.D.Pa.1960).

We think there was sufficient evidence to support the jury's verdict. The question is not whether this Court agrees with the jury's verdict or not, but whether the evidence supports the jury's verdict. This Court will not substitute its judgment for that of the jury. To do so would be to destroy the right to a trial by jury. Such a precious right must never be impaired. The jury could find from this evidence that the defendant designed and manufactured the bracket involved and supplied it to Cost, that it knew that Cost was a bricklaying contractor, and the purpose for which

the bracket would be used. It could find that Cost relied on defendant to send it proper brackets and trestles, and that the scaffolding was properly erected. The jury could also find that the men were working in a customary and normal manner on the scaffolding, and that even though the scaffolding was being used in a customary and normal manner, nevertheless, the bracket became dislodged, and that this dislodgement was the proximate cause of the death of Mr. Montesano. The jury could also find that the design of the bracket was dangerous, which was the primary theory of the plaintiff. A re-reading of Section 398 of the Restatement of Torts clearly indicates that the defendant was not entitled to the charge requested, and that the charge given was as favorable to the defendant as this theory permitted.

■■ The defendant has also asked this Court to grant a new trial. When a Court has before it the determination of a motion for a new trial, it will not grant one unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.

Our Court of Appeals has told us that in evaluating a motion for a new trial:
> "that the trial judge evaluate all significant evidence, deciding in the exercise of his own best judgment whether the jury has so disregarded the clear weight of the credible evidence that a new trial is necessary to prevent injustice." Zegan v. Central Railroad Company, 266 F.2d 101, 104 (3rd Cir. 1961).

We do not feel that the jury has so disregarded the clear weight of the evidence. We feel the jury could have just as well found for the defendant. The evidence was conflicting; the expert testimony was vigorously contested, but the jury made its decision. Quite often these "battles of experts" leave this Court less than happy. Improvement is needed in this field. But as of now the acceptable standards were met in this case.

We cannot overlook the testimony of Mr. Grejda, who was the local branch manager of the defendant, and who testified that when brackets are returned to the defendant company they are sometimes in a bent condition. These are hammered back into place and painted over. The jury could well have found that this bracket may have been sent out in a bent condition, was painted over, and the defect concealed. This portion of the evidence was not argued by either counsel to any extent, if at all; but, nevertheless, we deem it very significant, especially so when reviewing the question of a new trial.

We recognize that the plaintiff in this case was represented by a very large and experienced law firm in the trial of negligence cases in behalf of plaintiffs, and we should not endeavor to second guess their theories and approach to a lawsuit. However, it always seemed to this Court that the plaintiff could have proceeded under a much simpler theory if it had tried its case under the theory expressed in Section 408 of the Restatement of the Law of Torts. The testimony of defendant's local branch manager could well have made out a case of liability under Section 408 of the Restatement of the Law of Torts. This is another reason why we would not grant a new trial in this case because we feel if this case were tried again a verdict against the defendant could be found under Section 408 of the Restatement of the Law of Torts, and the complex question of defective design and the aforementioned "battle of experts" would not even be necessary. However, at this stage of the proceeding we recognize that such evaluations are somewhat conjectural, and are in effect Monday morning quarter-backing; but it does go into the Court's thinking as to whether or not a new trial ought to be given, and we feel that in a new trial the results would be no different than the verdict the jury has already reached. We can see no reason why a new trial should be granted.

■ Turning next to the contention of the third party defendant, Cost Brothers, for a new trial, the counsel for Cost urges that the Court inadequately charg-

ed the jury as to the duty of Cost as the employer of Frank Montesano, deceased. Of course, we must remember that this part of the charge concerned common law liability, and the defendant's liability was, of course, limited to the extent of contribution allowed by law. Naturally in view of the Workmen's Compensation Laws existing throughout this country, there are not many reported cases dealing with the common law duties of the employer to the employee, and that was what was involved in the third party claim. Of course, there is a common law duty by an employer to furnish his employee with a reasonably safe place to work. Counsel for Cost do not contest this. In regard to the duty of furnishing the decedent with a safe place to work, the Court charged as follows:

"In addition it is alleged that the third-party defendant, Cost Brothers, was negligent in that it failed to furnish the Deceased with a safe place to work. Under the law a continuous duty exists on the part of an employer such as the third-party defendant in this case, Cost Brothers, to use ordinary care in furnishing its employees with a reasonably safe place within which to work. The amount of caution required by that duty varies in direct proportion to the danger involved in the work. Putting the matter another way, the amount of prudence required of the third party defendant, the Deceased's employer, in the exercise of ordinary care to furnish its employees a reasonably safe place within which to work increases or decreases as the danger is known to exist, or that reasonably should be apprehended. Therefore, if you find that Cost Brothers breached this duty, that is, that they were negligent in failing to furnish the Deceased a reasonably safe place to work and that this negligence concurred with the negligence of the original defendant, Patent Scaffolding, and that both parties' negligence was a proximate cause of the acci-

dent, then you would make a finding in favor of Patent Scaffolding Company and against Cost Brothers for contribution."

This statement of the duty of furnishing a safe place to work is the same that this Court uses in defining the duty of the employer railroad in a Federal Employers' Liability Act case, and the language found in California Jury Instructions, Section 303–A. It is a short, succinct and easily understood instruction which adequately and clearly defines the employer's duty.

■ It also must be remembered that this case arose within the Commonwealth of Pennsylvania, and it is the law of Pennsylvania that must be applied. We endeavor to do this, and we find that the few reported cases in Pennsylvania concerning the employer's common law duty of furnishing his employee with a reasonably safe place to work are in accord with what we instructed the jury. See the cases of McCombs v. Pittsburgh & W. Ry. Co., 130 Pa. 182, 18 A. 613, and Bier v. Standard Manufacturing Co. (Appeal of Standard Manufacturing Co.) 130 Pa. 446, 18 A. 637.

The counsel for Cost admits that the charge was given in what he terms technically correct language, but he suggests that, nevertheless, it necessarily misled the jury. With this contention we just cannot agree. We think the charge was adequate, fair, and in no way misled. Accordingly, the motion of Cost · Brothers for a new trial must be denied.

This leaves the last contention, and that is the motion of Patent Scaffolding as against H-M Construction Company in which it seeks a new trial against H-M Construction Company, a third party defendant, whom the Court had previously dismissed from the case. There is nothing more that could be stated at this point other than what we had said when the motion was made at the trial. At the conclusion of the testimony in the case, we held that we could find no basis for holding H-M Construction Company, Inc., in as a defendant in this case.

There was no evidence of a breach of any duty on their part, and the motion was granted, and there is no reason to grant a new trial.

In addition, we have considered the amount of the jury's verdict, and we do not think it excessive, but adequate under the circumstances, and a new trial cannot be granted on the basis of an excessive verdict in this case.

An appropriate order will be entered.