SHANNON, Judge.
The appellant appeals from a final judgment rendered on March 13, 1965, in a death case where the jury entered a verdict of $137,000.00. The court denied a motion for new trial.
The appellee-plaintiff brought this action under the provisions of Fla.Stat., Secs. 768.01 and 768.02, F.S.A., for the recovery of damages for the death of her husband, Ronald Richard Hendrickson, on April 3, *179 1964, as a result of a motor vehicle-train collision at the Huntington crossing in Putnam County, Florida. The case was tried on the issues of denial of negligence on the part of the defendant and the presence of negligence on the part of the plaintiff’s decedent as the sole proximate cause of, or as a proximate contributing cause of, the accident and death. Appellant’s motion for directed verdict at the close of the evidence was denied and thereafter appellant’s motion for judgment in accordance with motion for directed verdict, or in the alternative, motion for new trial, was denied.
The accident occurred at 4:00 P.M. on Friday, April 3, 1964, at a crossing of the appellant railroad in Putnam County, Florida. The deceased approached from the west side of State Road S-308 at a speed of approximately 35 to 40 miles an hour; the train approached from the south at a speed of approximately 80 miles an hour. The train whistle was blown continuously for several earlier crossings, as well as the crossing in question. The automatic bell was ringing and the headlights were burning. The crossing was protected by an automatic signalling device operated electrically as part of the electrical track circuit controlling the operation of trains over that section of track. At 80 miles an hour the automatic signals operated 28 seconds prior to the engine reaching the crossing. There was no inadequacy of evidence on any point in the case. Suffice it to say that the ap-pellee’s decedent was the sole proprietor of a fish camp, and supported his wife and four children from his income as operator of the fish camp and as a commercial fisherman.
Appellant has five points assigned in its brief, namely:
1.The court erred in denying certain objections to the qualifications and competency of plaintiff’s expert witnesses, and to the sufficiency of facts upon which opinions were given, and in denying motion to strike and motion for mistrial based thereon.
2. The court erred in ruling that evidence was admissible to show operational failures of the automatic signalling devices at the crossing in question within a period of time not beyond two years prior to the accident or more than one year after the accident, and in overruling defendant’s objections to and motion to strike certain testimony involving an operational failure of the crossing lights at a time months after the accident.
3. The court erred in denying defendant’s challenge for cause of prospective juror.
4. The court erred in denying defendant’s motion for mistrial after the court refused to instruct the jury to disregard improper argument by plaintiff’s counsel.
5. The court erred in charging the jury on the comparative negligence statute, being Fla.Stat. of 1963, Sec. 768.06, F.S.A.
The qualifications of Mr. Vanderstempal, called as an expert witness for the plaintiff, may be summarized as follows: a) his occupation was that of consulting engineer and director of parking and traffic engineer in the City of Ann Arbor, Michigan; b) he had been in traffic work of some type since 1935; c) he was a graduate engineer and electrical and mechanical engineer and registered civil engineer; d) his duties with railroad and highway crossings were to check the safety of grade crossings; he had observed about thirty installations of crossing signals, but his only direct contact was running time tests to determine if the signals operated the proper time period prior to the approach of a train; e) he had never designed, installed, or maintained a railroad signalling device; f) he had no background or experience in the installation, maintenance, or operation of electrical systems used to control the movement of trains; g) he did not know the two major types of block systems used for the control of the movement of trains; and h) when he inspected the instrument panel *180 at the crossing he did not know which relays did what part of the work.
Upon examination by the court, the witness gave the following answers:
“Q. Now based on what your experience and education is concerned, are you qualified to discuss the electrical aspect of these things?
“A. I know where they are supposed to operate.
“Q. How do you know it ?
“A. . From study and experience.
“Q. That’s where I came in, let’s go back there. What is your experience with respect to your knowledge of how the details of how this thing operates ?
“A. No, sir, not about the details. The only definite knowledge I have is when they should operate. I know when they should start to function.
“Q. You are speaking of the time aspect ?
“A. That’s right.
“Q. And only the time aspect?
“A. That’s correct.
******
“Q. Was there anything other than timing other from a standpoint of measures or protection to the public or did you have responsibilities in this inspection that related to whether or not this thing operated properly from an electrical standpoint ?
“A. No.
“Q. No responsibility?
“A. No, sir.”
The court thereupon made the following ruling: “All right, I am going to let the jury weigh whatever possibilities that this man’s capacity is to convince.” Pursuant to this, over the objection of appellant, Mr. Van-derstempal was permitted to testify that in his opinion the track at the crossing in question was in poor condition at the time of the accident and that a leakage between circuits could prevent the de-energizing of the relays and the proper operation of the signal lights. The only fact in evidence upon which this opinion was based was defendant’s Exhibit 1, a photograph of the crossing taken a day or so after the accident. The witness was also permitted to testify that upon a study of the plans of the crossing it was his opinion that the polarities between tracks were wrong and that a relay had been improperly located. Upon the conclusion of all of Mr. Vanderstempal’s testimony the appellant’s attorney moved to strike all of the testimony of this witness and moved for a mistrial. These motions were denied.
1 A Mr. Hiers was also called as an expert witness for the appellee. According to the evidence: a) his occupation was consulting engineer in Tampa; b) he had fifteen years of experience with the General Electric Company working in power engineering and marketing sections, involving utility’ power and industrial power systems; c) he was registered as a professional engineer in four states; d) he had prior designing experience with electrical systems using relays; e) he was not familiar with the requirements of the Interstate Commerce Commission regarding installation of signal devices at railroad grade crossings; f) he was not familiar with the two major types of equipment manufactured in the United States for grade crossing signal equipment; g) he was not familiar with the two major block systems used throughout the United States for control of operation of trains; and h) he had no prior experience in the operation of railroad signal devices prior to the instant suit. Upon the appellant’s objection to the witness’s qualifications and competency, the court overruled the same and held that he was competent to testify.
The appellant contends that both Mr. Vanderstempal and Mr. Hiers were incompetent to testify as experts and that the *181 admission of their testimony constituted prejudicial error. It is submitted that neither Vanderstempal nor Hiers purported to testify as experts on railroad subjects or operations. Their testimony as to proper design of electrical relay systems with respect to polarity was based upon fundamental principles of electrical engineering within the competency of knowledge of both as qualified electrical engineers. They were qualified to give the testimony adduced from them. Even if these experts were permitted to express opinions on points that did not fall within their expertise, which is of course denied, no reversible error would exist because without any of their testimony there was other testimony entirely sufficient to support the verdict of the jury. But regardless of this, they were experts who were qualified to express their opinions and the court did not commit reversible error in allowing them to so do. The court came well within the Florida rule by permitting both of these witnesses to testify. Myers v. Korbly, Fla.App.1958, 103 So.2d 215; and Wigmore on Evidence, 3d Ed., Sec. 561, p. 641.
In regard to appellant’s point numbered 2, the court did not commit reversible error by allowing into evidence testimony to show operational failures of the automatic signal devices at the crossing in question within a period of time not beyond two years prior to the accident or more than one year after the accident, and in overruling defendant’s objection to and motion to strike certain testimony involving an operational failure of the crossing lights at a time months after the accident. There appear to be no binding Florida decisions on this question. However, the Fifth Circuit has had occasion to rule on this point. Atlantic Coast Line R. Co. v. Smith, 1943, 135 F.2d 40; and Metcalf v. Central Vermont Ry. Co., 1906, 78 Conn. 614, 63 A. 633. In addition, see Atchison, Topeka & Santa Fe R. Co. v. Aynes, Okl., 271 P.2d 312, 46 A.L. R.2d 930, 935.
The third point as to whether or not the court erred in denying defendant’s challenge for cause of prospective juror, James Allen, can be resolved without difficulty. In appellant’s brief, pp. 32 and 33, it is stated:
“Appellant recognizes it is the settled law in this state that any decision of the trial judge with respect to the qualifications and conduct of jurors rests largely within his discretion and that the rulings of the trial court will not be invalidated in the absence of a showing of abuse of discretion. * * * ”
In the instant case the juror simply stated that he had a lawsuit for an injury received in a railroad crossing accident pending in another court against Seaboard Air Line Railway. We quote from the appellant’s brief, p. 32, wherein it is stated: “ * * * [A] decision in the instant case would not be determinative of the claim of Mr. Allen against the Seaboard * * The appellant merely states that the Jefferson County case is persuasive authority because the subject matter of Mr. Allen’s suit and of the instant suit appear to be a railroad crossing accident. Appellee asserts that this statement, of course, is a complete non-sequitur, and wholly without merit, and as authority quotes the Florida law as saying:
“The question of whether a juror is biased or impartial is largely a judicial one to be determined by the trial court on all the facts and circumstances as they may appear * * * but when it does not appear that the juror is biased or prejudiced, or that the circumstances of the case are such as to evince good reason for interest or bias, the court is justified in refusing a challenge for cause.” 20 Fla. Jur., Juries, Sec. 113, pp. 129, 130.
In regard to point numbered 4, we will mention this, but at the same time we will deny the appellant any relief by reason of it. The point that we are discussing concerns alleged improper argument by attor *182 neys for appellee. The basis for our opinion is the fact that the record in this cause does not contain the argument of counsel; and since the record does not include the argument of appellee’s counsel to the jury it is impossible to determine from the record just what was said by counsel, and without the substance of same being in the record, this point cannot be properly considered in the absence of timely objection to same. The general rule is stated in 32 Fla.Jur., Trial, Sec. 136. Also, see H. I. Holding Company v. Dade County, Fla.App.1961, 129 So.2d 693; and Tyus v. Apalachicola Northern Railroad Company, Fla.1961, 130 So.2d 580.
That leads to appellant’s point numbered 5 where the question is asked whether the court erred in charging the jury on the comparative negligence statute, being Fla. Stat., Sec. 768.06, F.S.A. (1963). This is a very interesting point because of the decision of the Florida Supreme Court in Georgia Southern & Florida Railway Co. v. Seven-Up Bottling Co., Fla.1965, 175 So.2d 39. The plaintiff and the defendant both requested instructions on comparative negligence under Fla.Stat., Sec. 768.06, F.S.A. The court instructed the jury on the comparative negligence issue substantially in accord with the requested instructions. Neither plaintiff nor defendant made objection to said instruction. Even the motion for new trial included only the general law. The judgment for the plaintiff in the instant case was entered on March 13, 1965, and the decision of the Supreme Court of Florida in the Seven-Up case, supra, was entered approximately two months later, on May 12, 1965.
The order of the trial court denying post-trial motions was entered on April 8, 1965. Thereafter the appellant filed notice of appeal on June 4, 1965. The appellant, as stated on p. 39 of its brief, takes the position that:
“No authority need be cited for the general view that appellate courts will not consider questions, points, grounds, or objections raised for the first time in the appellate court. A recognized exception to this rule concerns jurisdictional or other fundamental errors which are apparent on the face of the record. Rule 3.7(i), Florida Appellate Rules [31 F.S. A.] ; 2 Fla.Jur., Appeals, Sec. 290, p. 632. In particular, a fundamental constitutional error may be urged for the first time in an appellate court. [Town of] Monticello -v- Finlayson [156 Fla. 568], 23 So.2d 843 (Fla.1945); Parker -v-[Town of] Callahan [115 Fla. 266], 156 So. 334 (Fla. 1934).”
Since the decision in the Seven-Up case, supra, we have a decision of the Third District Court of Appeal which discusses the Seven-Up case and takes up the very question that is now before us, that is, Florida East Coast Railway Company v. Rouse, Fla.App.1965, 178 So.2d 882, decided on October 12, 1965. In its opinion the court stated:
“We recognize that an exception to the above rule is that ‘fundamental error’' may be noticed by an appellate court, even-though such error has not been asserted below, see Rule 3.7(i), Florida Appellate Rules, 31 F.S.A. However, the error herein alleged does not fall within that classification. Moreover, still another postulate of law precludes appellant from-assailing the judgment appealed on the basis of the unconstitutionality of Sec. 768.06, supra. That is, that a party can. not successfully complain of error for which he is responsible. In the case sub-judice appellant requested the instruction on comparative negligence and it was appellant’s requested instruction thereon-which was ultimately given to the jury, see Karl v. David Ritter Sportservice,. Inc., Fla.App. 1964, 164 So.2d 23.
“Turning to appellant’s points properly-raised on appeal, it is our conclusion that the verdict is amply supported by the evidence and we find no reversible error. The judgment appealed is therefore affirmed.”
*183 "The latter question of the instant case is .almost identical with the Rouse case, supra, and hence this court will follow that decision.
Affirmed.
ALLEN, C. J., and PIERCE, J., concur.