199 So.2d 291 (1967)
GATES & SONS, INC., a Foreign Corporation, Appellant,
v.
Shelby BROCK, Appellee.
No. I-188.
District Court of Appeal of Florida. First District.
May 9, 1967.
Rehearing Denied June 20, 1967.
*292 H.O. Pemberton, of Keen, O'Kelley & Spitz, Tallahassee, for appellant.
Nichols, Gaither, Beckham, Colson, Spence & Hicks, and Podhurst & Orseck, Miami, for appellee.
JOHNSON, Judge.
Appellant appeals from a final judgment entered upon a jury verdict in plaintiff-appellee's favor of $86,300.00.
The plaintiff, Shelby Brock, a carpenter employed by Albritton-Williams, Inc., received severe personal injuries when he fell from a distance of forty-seven feet after a scaffold from which he was working suddenly collapsed. At the time of the unfortunate accident Brock was standing on a scaffold and placing wooden forms for wall construction on the partially completed Game and Fresh Water Fish Commission Building in Tallahassee, Florida, when a snap-tie broke which had been supporting the scaffold. Plaintiff's motion for summary judgment on the issue of contributory negligence was granted.
Plaintiff's employer on the date of the accident was using a "snap-tie" device to support the scaffold on which Brock was standing prior to his fall. The poly-cone break-back tie was sold to Albritton-Williams by Strickland-Chrobak, Inc., the latter corporation being named as a defendant in the original complaint but was granted a summary judgment in its favor. Gates & Sons, Inc., the defendant at the trial of this cause, was the manufacturer of the poly-cone break-back tie.
The sales and advertising promotion presented by Gates to prospective construction customers is that this break-back tie will serve a dual purpose in the construction of concrete walls. Not only will it serve the usual purpose of holding at an even distance the inner and outer plywood forms within which concrete is poured in erecting a concrete wall, but the tie can also be used to support a steel bracket against the wall on which scaffold boards are placed for use during construction. It is this latter use from which the issues in this case arose.
After the concrete wall has hardened and when the snap-ties are no longer needed to support scaffolds the snap-tie loop which protrudes from the wall is to be twisted or broken off. When this is accomplished the concrete is smoothed over. There is a small notch in the snap-tie known as the "upset area" which is designed to break off when the tie is twisted.
In constructing a building extra reinforcement is needed especially at floor levels and sometimes in other areas. A "spandrel beam" serves this purpose and when such is present a snap-tie can be fastened only to the outer form. Because it can not fasten to the inner wall form the snap-tie rod after it passes through the outer wall form is embedded in the concrete.
There was some evidence that during the course of construction some of the snap-ties would become bent, either from contact by the workmen as they climbed about the building or they would be deliberately bent when a "spandrel beam" presented an obstruction. After the concrete was poured it was impossible to know whether the ties which were embedded in the concrete were bent. No evidence was presented showing that Gates ever warned or stated, either in its advertising or personal discussions with plaintiff's employer, that the use of bent *293 ties to support scaffolds was dangerous or hazardous to employees working from the scaffolds and that such ties should not be used for the purpose of scaffold support. Nor was there any proof that Albritton-Williams, plaintiff's employer, ever gave a specific warning to its employees to refrain from attaching scaffold brackets to snap-ties they knew to be bent.
A six inch diameter concrete core containing the broken poly-cone break-back tie was removed from the wall of the building and the broken tie was removed from the concrete by a metallurgical engineer, Mr. Ralph T. Duncan. It was found upon examination that the broken tie had been fastened only to the outer wall form and the end of the tie was embedded in the concrete. There was a 42.5 degree bend in the notch tie which was embedded in the concrete. It was the conclusion and opinion of Mr. Duncan that there were no inherent defects in the metal of the tie and the tie broke because the 42.5 degree bend caused the tie to fail below its normal yield strength.
A witness, with many years experience as a mechanical engineer in industry and as a professor of metallurgy, testified on behalf of the plaintiff. He was of the opinion that the snap-tie manufactured by Gates was not safe for the purpose of holding scaffold brackets and scaffolds. He stated that the upset area, at which point the tie could be broken off when its use had ended, was so designed as to weaken the tie too much to be used for the scaffold purpose. Not only was the upset area of an unsafe nature, but this witness was of the further opinion that the product was not safe for use to support a scaffold because there was no safety factor present in case one of the ties broke, as was the situation resulting in Brock's fall. If a tie should break the scaffold which it supported would then fall if the Gates system was being used.
The Gates method of using snap-ties for a dual purpose had been tested for about two years prior to its introduction on the market. This method had been used in other states for about seven years although the construction job at which Brock's accident occurred was the first or one of the first at which the Gates poly-cone break-back tie had been used in the state of Florida. An official of the Gates company testified that this accident was the only one of which he was aware that a snap-tie had broken while being used as a scaffold support.
The appellant's brief enumerates ten points on appeal. The first deals with whether the complaint stated a cause of action under Rule 1.110(b) (2), Florida Rules of Civil Procedure, 30 F.S.A. The complaint was in two counts  negligent design and manufacture of the snap-tie and breach of implied warranty. We find that the complaint adequately met the requirement of the rule and the trial judge did not err in failing to dismiss the complaint.
The second point presents the question of whether appellant was entitled to a summary judgment in its favor. The trial judge ruled against appellant and we think properly so under the guidelines established by our Supreme Court in Holl v. Talcott, 191 So.2d 40 (Fla. 1966).
Next, appellant argues that the trial judge committed error in refusing to admit in evidence the exact copies of hospital bills. The bills which were allowed in evidence were addressed to the plaintiff whereas the bills which defendant-appellant desired to have in evidence were addressed to the Workmen's Compensation carrier of plaintiff's employer. These latter bills reflected that payment to the hospital was made under the Workmen's Compensation Law. Except for the party to whom the bills were addressed the bills were in all respects identical. The trial judge ruled that the difference between the bills offered by plaintiff and the originals proffered by defendant was immaterial. This ruling was free from error in view of the fact that in a liability suit against a third party the issue of whether the employee has received the *294 benefits of any payment under workmen's compensation is not material. The purpose of the suit is to attempt to establish liability on the third party (Gates) and in most instances the presence of workmen's compensation benefits for the employee is not a proper consideration for the jury. See Tampa Sand & Material Co. v. Johnson, 103 So.2d 250 (Fla.App.2d, 1958); Ruskin v. Travelers Ins. Co., 125 So.2d 766 (Fla. App.2d, 1960).
The appellant then questions the propriety in allowing Professor O.M. Harrelson to testify for the plaintiff on the subject of the design of the Gates break-back tie. In Florida the trial court has the duty to determine the qualifications of an expert witness and the subject matter on which he can testify and his judgment in this regard will not be disturbed on appeal unless a clear abuse of discretion is made to appear. Central Hardware Co. v. Stampler, 180 So.2d 205 (Fla.App.3d, 1965); Home Ins. Co. v. Wiggins, 147 So.2d 157 (Fla.App.1st, 1962); Krohne v. Orlando Farming Corp., 102 So.2d 399 (Fla.App.2d, 1958). We feel that there was no error in allowing this witness to testify and express his opinion concerning the design of the break-back tie. Our decision is in accord with that of the Second District in Atlantic Coast Line R.R. Co. v. Hendrickson, 190 So.2d 178 (Fla.App., 1966) where two electrical engineers were allowed to testify on design of electrical relay systems although they were not experts on railroad subjects or operations. In the case at bar it was demonstrated that the professor was an experienced mechanical engineer and was an expert in the field of metallurgy. His experience included that of advising and consulting with various industrial companies as to design of metal products and failure of metal products.
Next, the question of proximate cause is raised. Rather than to delve into all the testimony of the witnesses, we think it sufficient to say that the testimony presented on product design and use was of such nature as to generate a jury question on the issue of proximate cause and the jury was properly instructed in this regard. Montesano v. Patent Scaffolding Co., 213 F. Supp. 141 (W.D.Pa., 1962). Likewise, the question of breach of implied warranty, whether the product was reasonably fit for its intended purpose, was a factual question for the jury.
Three points argued by appellant relate to instructions given the jury. Careful consideration has been given to all the instructions which were given and on the whole these instructions adequately covered the law applicable to the issues involved in this case. Montgomery v. Stary, 84 So.2d 34 (Fla. 1955); Southeastern Gen. Corp. v. Gorff, 186 So.2d 273 (Fla.App.2d, 1966).
Finally, appellant argues that both the issues of negligence and breach of implied warranty of fitness should not have been allowed to go to the jury. Instead, plaintiff should have elected on which theory he wished to proceed. The assignment of error from which this point is said to arise contains a portion of the trial judge's charge to the jury on negligence and breach of implied warranty. We have found no request in the transcript of testimony by counsel for appellant where he asked the trial judge to require plaintiff to elect, either before or after verdict, on which theory he wished to hold plaintiff liable nor has counsel cited us to any page in the transcript where he proposed such a request to the trial judge. Nor does it appear that appellant requested that the jury indicate in its verdict on which theory it found liability. Thus, the trial judge never was given an opportunity to rule on the alleged error argued in this point. It follows that the question cannot be presented for the first time on appellate review. Paul v. Kanter, 155 So.2d 402 (Fla.App.3d, 1963); Nelson v. Cravero Constructors, Inc., 117 So.2d 764 (Fla.App.3d, 1960); Marsh v. *295 Sarasota County, 97 So.2d 312 (Fla.App.2d, 1957).
Reversible error not being made to appear, the judgment appealed is hereby affirmed.
WIGGINTON, Acting C.J., and SPECTOR, J., concur.