314 So.2d 176 (1975)
VITALE FIREWORKS MANUFACTURING CO., INC., Appellant,
v.
Emil Paul MARINI and Rose Christine Marini, Appellees.
No. V-277.
District Court of Appeal of Florida, First District.
May 23, 1975.
Rehearing Denied June 18, 1975.
*177 Robert P. Gaines, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
L.L. Mabie, Jr., of Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, Pensacola, for appellees.
McCORD, Judge.
This is an appeal from a final judgment rendered after a jury verdict in favor of appellees (plaintiffs). This is a companion case to Case No. V 384, 314 So.2d 180. The two appeals arise out of the same accident and the opinion in the companion case is also being released on this date. Since we have related some of the facts necessary to the adjudication of this appeal in our opinion in the companion case, we will not repeat them here, other than to amplify them as may be appropriate to this appeal.
The central question on this appeal is whether or not the trial judge erred in instructing the jury on the doctrine of res ipsa loquitur. Appellee Emil P. Marini lost his hand and part of his forearm as the result of an explosion of a pyrotechnic device in a fireworks display that he was employed to put on for Town and Country Plaza Shopping Center. He and his wife brought this action against Vitale Fireworks Manufacturing Company, Inc., the manufacturer of the fireworks, charging negligence in the manufacture of the rocket that exploded prematurely thereby causing his injury. Marini, a retired fire department captain, had conducted similar fireworks displays for many years previously and had put them on for Town and Country for the past several years. Although he did not read the firing instructions of the manufacturer before putting on this display, it appears from the evidence that he was thoroughly familiar with them from his previous experience. He testified that he had followed the instructions in every respect and there was no direct contradictory testimony.
The display began shortly after dark and Marini's son-in-law, Stephen Fell, was his only helper. In order to fire the rockets, mortar tubes were partially embedded in the ground in a crescent shape. The rockets came in different sizes and each size was packed in a different box. The boxes were placed some distance behind the mortars. *178 The procedure followed by Marini and his son-in-law, as described by both of them, was for Marini to go from mortar to mortar around the crescent firing the rockets. Fell would remove a rocket from the box, meet Marini between the row of boxes and the mortars, hand the rocket to Marini and Fell would then turn and walk to the next box. Marini would walk to the next mortar holding the torch in his right hand and the rocket in his left. He would put the body of the rocket into the mortar, letting the fuse come out of the top of the mortar tube to the ground. The fuse is long enough so that several inches of it would lie on the ground. The fuse is exposed for several inches at the end and is covered with paper for the balance of its length into the rocket. The routine procedure was to trail the rocket fuse behind the mortar, remove a paper covering from the end of the fuse and light the fuse with a torch. A period of several seconds would elapse between the time the end of the fuse was lit and the firing of the lifting charge in the rocket shell. It was agreed by all of the technical witnesses that when the burning end of the fuse reaches the paper covering, the remainder of the fuse burns almost instantaneously. The part of the fuse which is exposed to the air burns at the rate of one inch per second.
Marini testified that he normally had sufficient time after lighting the end of the fuse to step back away from the mortar. He further testified that after placing the shell which caused his injury in the tube, he bent over from a standing position behind the tube and applied the torch to the end of the fuse; that almost instantaneously there was an explosion and he realized his left arm was injured and that he also had some burns about his face. His injury terminated the display.
There was no direct evidence of negligence in the manufacture of the rocket. Marini's case is based upon the evidence presented as to his own lack of negligence and upon the doctrine of res ipsa loquitur. No one was in a position to see Marini clearly when the accident occurred. Several witnesses testified that the last rocket fired in the display (the one which caused the injury) did not seem to go as high as the others. Estimates as to its height ranged from just a few feet off the ground to approximately 65 feet. Marini stated that he heard only one explosion and as soon as he heard it, he realized that he had been hurt. The other witnesses saw the rocket explode in the air. There was no damage to the mortar tube.
The jury was given two forms of verdict and were instructed that should they find no negligence on the part of Marini, they should use one form while if they found that there was negligence on his part, they should use another form, inserting the percentage of negligence in a blank. The jury returned the verdict form finding Marini free of negligence. Appellant contends that a finding of no negligence on the part of Marini is contrary to the laws of physics; that he must have had his hand over the mortar tube when the explosion occurred; that such was negligence as the instructions of the manufacturer for firing the rockets warns that the operator should never expose any part of the hands over the mouth of the mortar. Appellant also argues that in spite of Marini's testimony, he must have lit the fuse at a point other than its end.
We find that the trial court was correct in instructing the jury on res ipsa loquitur and that the negligence issue was properly submitted to and decided by the jury. The credibility of the testimony of Marini and the other witnesses, along with a determination of the facts was a jury question and we are not authorized to substitute our judgment for that of the jury.
As to the doctrine of res ipsa loquitur, appellants cite our recent opinion in Coca-Cola Bottling Company v. Clark, Fla.App. (1st) 299 So.2d 78 (1974), a bottle *179 drink explosion case in which we held that it was error for the trial judge to instruct the jury on res ipsa loquitur under the evidence presented there. In reaching that conclusion, we quoted as follows from the opinion of the Supreme Court in Groves v. Florida Coca-Cola Bottling Company, Fla., 40 So.2d 128:
"The record shows that the appellant failed to submit any direct evidence of negligence on the part of Florida Coca-Cola Bottling Company. The question for decision is whether such evidence as was adduced was sufficient to invoke the application of the rule res ipsa loquitur under which direct proof of active negligence is not indispensable in order to place on the manufacturer of bottled beverages the burden of explanation or rebuttal.
It is recognized by the decisions of this court that a manufacturer of bottled beverages may be held liable for injuries resulting from exploding beverage bottles after they have passed from the possession and control of the manufacturer, even though the injured person may fail to offer any direct proof of negligence on the part of the manufacturer. Before the duty devolves upon the manufacturer of going forward with the evidence in such a case, however, the injured person must make an affirmative showing that after the bottle left the possession and control of the bottler it was not subjected to any unusual atmospheric changes or changes in temperature such as might have been reasonably calculated to render the bottle defective or otherwise to cause an explosion and that it was not handled improperly from the time it left the possession of the bottler up to the time of the explosion. ..."
In the case sub judice, an affirmative showing was made that after the rockets left the possession and control of the manufacturer, they were not subjected to anything that might have been reasonably calculated to render one of them defective; that the prematurely exploding rocket was not improperly handled from the time it left the possession of the manufacturer up to the time of the explosion. Evidence was presented to the effect that the fireworks were shipped by REA Express in several boxes by the manufacturer to Town and Country. Mrs. Fillingim received them for Town and Country and she testified that they were in perfect condition when received; that she had the boxes placed on the floor in the room adjacent to her office; that Mr. Hagerman, their maintenance superintendent, opened the boxes with instructions that he lift the packing (paper shavings) and count the number of shells in each box to be sure they had everything they had ordered; that the rockets were not taken from the boxes; that no other person other than Hagerman opened them or touched them before they were delivered to Marini. Hagerman testified that he opened the boxes and counted the rockets; that there was quite a layer of paper packing on top of them which he removed and counted the shells; that he could see how many shells there were without moving them; that he did not handle any of the fuses and when he completed his count, he went on about his other business.
The fireworks had been delivered to Mrs. Fillingim on June 17 and were kept in her adjoining room under her supervision until they were picked up by Marini on the afternoon of June 30 for the fireworks display that evening. Mrs. Marini testified that they had been kept in a cool, safe place under her supervision in her adjoining room from the time they arrived until they were picked up by Captain Marini, who was assisted by his son-in-law, Fell, and loaded on a truck. Marini testified that he, Fell, and a helper, Sam, loaded them on the truck; that they "handled them carefully like you're supposed to handle fire explosives. We don't take them and throw them on the truck, we took and *180 set them on the truck in a very orderly fashion ..." He further testified that he saw and supervised every movement of the fireworks from their removal from the place where they were stored until they were loaded on the truck and carried by them approximately one block to the site of the fireworks display; that after placing the mortars in the ground, they removed the boxes of shells from the truck and placed them behind the mortars; that they did not move the shells from one box to another. Fell testified that each box of shells was kept approximately 25 to 30 feet behind the mortars; that there was one box of shells per mortar and each box was kept behind its respective mortar; that he was stationed behind the boxes and as they were filed by Marini, he (Fell) would move to the next box; that Marini would come back and he (Fell) would go forward and hand Marini a shell and then return to the box and go on over to the next box. He testified that upon receipt of a shell, Marini would take the wrapper off of the fuse and place the shell in the mortar, trailing its fuse out on the side; that he would then light the fuse and step back and would normally get about five or six feet away before the rocket was fired into the air; that he did not see Marini light the shell that exploded, that he generally turned his back to the blast and noise; that after giving Marini the shell that exploded, the next thing he noticed "there was a tremendous blast. I got pushed back toward  I mean pushed away in the direction I was facing, and I turned around and Mr. Marini, he was coming back to me and said he had lost his hand." His hand was later found 75 to 100 yards from the firing area.
While it is difficult to understand how Marini's hand was blown off if it was not over the mortar at the time of the premature explosion, he testified that it was not. This was a jury question. Had his hand been over the mouth of the mortar, such would not have denied his recovery under comparative negligence but would have reduced his damages by the degree of his negligence. We find that the trial judge properly charged on res ipsa loquitur under the evidence of this case and are unable to conclude that the jury's verdict was against the manifest weight of the evidence.
Appellant also contends that a witness of appellee, who testified as an expert witness, was not properly qualified as an expert to express expert opinions on whether there was a defect in the rocket. It is the duty of the trial court to determine the qualification of an expert witness on the subject matter on which he testifies and his judgment will not be disturbed on appeal unless a clear abuse of discretion is made to appear. See Davis v. State, 44 Fla. 32, 32 So. 822; Home Insurance Company v. Wiggins, Fla.App. (1st), 147 So.2d 157, and Gates and Sons, Inc. v. Brock, Fla.App. (1st), 199 So.2d 291. We find no such abuse of discretion by the trial judge.
Affirmed.
BOYER, Acting C.J., and MILLS, J., concur.