SMITH, Judge,
specially concurring:
Prohaska appeals from a judgment of the Circuit Court of Marion County awarding The Bison Company $60,703.71 in damages for Prohaska’s alleged breach of a contract for his purchase from Bison of one million locks, to be fabricated by Bison to Prohas-ka’s design. Prohaska rejected an early shipment on the stated ground that the locks “are not of the specified grade of material and all the samples show substantial degradation,” and apparently repudiated any further obligation. Bison’s damages included the contract price for locks delivered and its expenditures in tooling up for *798 full performance of the contract. The scope of our review is limited by the absence of appropriate motions, objections, and pertinent arguments addressed to the trial judge, who tried the case without a jury. Our consideration of the case is further complicated by Prohaska’s lack of legal representation in the presentation of his posttrial motion and this appeal. Yet I think that Prohaska’s pro se brief fairly raises the question of the legal effect of the evidence on which Bison prevailed below; I believe the trial court’s judgment misapprehended the legal effect of the evidence; and I therefore concur in the decision to reverse the judgment and remand the case for a new trial.
Prohaska designed a lock and contracted for its production by Bison, who subcontracted to R and R Plastics, of Toledo, Ohio, the molding of the several parts from Lex-an 141, a polycarbonate or plastic material supplied by General Electric. Bison’s role was limited to assembling the parts, riveting them together, and packaging the locks; but by contract Bison was responsible for defects in materials and workmanship.
Bison’s complaint was a simple one, alleging the contract, Bison’s delivery of locks, Prohaska’s refusal to pay, and Bison’s damages. Prohaska’s answer contained affirmative defenses which generally averred that the locks delivered were defective in material and workmanship and that Prohaska was justified in returning the locks and terminating the contract. Bison’s reply to the affirmative defenses was a simple and unnecessary denial; but at trial, without objection from Prohaska on relevancy grounds, Bison adduced evidence in its case in chief anticipating and avoiding Prohas-ka’s affirmative defenses. Through the opinion testimony of the witness Hanus, the principal of R and R Plastics, Bison undertook to prove that the locks were defective in design. Thus, while Prohaska was later to adduce substantial evidence that a miscarriage of R and R’s molding process produced internal bubbles and other degradations of the Lexan material in the locks, reducing their strength below acceptable levels, Bison sought to show that by design the locks were subject to breakage by hand pressure at the rivet hole in one corner of an important part, where the wall thickness was but forty-seven one thousandths of an inch. The witness Hanus testified, and he demonstrated in a courtroom test, that a lock so designed would fail “at that point” whether the lock was molded in Lexan 141, or aluminum, or steel.
Prohaska’s counsel objected to the opinion testimony on the ground that the witness Hanus was unqualified to express the opinions that the lock was defective in design, not in material or workmanship, and that a steel lock would not be stronger “at that point” than the Lexan 141 lock molded under the witness’ supervision. I find no error in the trial court’s admission of the opinion testimony over the stated objection. The witness Hanus testified that he had received formal education in various engineering disciplines, engaged in business for twelve years as a “custom design molder,” had served as president of a plastic engineering society in Toledo, and had substantial practical experience in molding plastic materials. By training and experience, and as the supervising principal of the molding subcontractor jointly chosen by Bison and Prohaska to do the work, Hanus was surely qualified to describe the properties of Lex-an 141, the heat molding process he employed, and the quality controls used to assure the integrity of his products. He was qualified to express the general opinion that his product had no defect of material or workmanship.
I would also sustain the trial court’s finding that Hanus was qualified to express the opinion that the lock was defectively designed “at that point” where he readily broke sample locks, both Lexan and steel, in his hands. He testified that “I do most of my own design work, dictation of design, part design for our customers, this is the role of a custom molder, that we assist our customer in design specifications of particular engineered plastic products.” The witness testified that he had substantial experience in molding parts in aluminum and steel, and there was no suggestion on voir *799 dire examination by Prohaska’s counsel that the witness had incompetently molded the steel test lock with which he made his courtroom demonstration. Trial judges are accorded wide latitude in determining the qualifications of proposed expert or skilled witnesses, and the range of their testimony, and their decisions are not to be reversed absent a clear showing of error. See, e. g., State Road Dept. v. Outlaw, 148 So.2d 741 (Fla. 1st DCA 1963); Johnson v. State, 314 So.2d 248 (Fla. 1st DCA 1975); Vitale Fireworks Mfg. Co. v. Marini, 314 So.2d 176 (Fla. 1st DCA 1975); Home Ins. Co. v. Wiggins, 147 So.2d 157 (Fla. 1st DCA 1962); Gates & Sons, Inc. v. Brock, 199 So.2d 291 (Fla. 1st DCA 1967).
Although the witness Hanus was in my opinion duly qualified as an expert or skilled witness, the legal effect of his testimony is another matter. Prohaska adduced other expert testimony tending to show, as cause for Prohaska’s rejection of the shipment and his termination of the contract, that test samples of the Lexan locks delivered were substantially below acceptable levels of tensile strength, yield strength, and elongation-to-rupture strength. Relying on Hanus’ testimony, the trial judge found that “this article was manufactured according to the specifications and design, and that any defect was due to a defect in either the specifications or the design of the article.” In the light of Hanus’ testimony, which was the finding’s sole support, the trial court’s finding is to the effect that the sample locks’ failure to attain more than 6,647 pounds per square inch yield strength was inconsequential, because the locks were so designed that, whether molded of steel or Lexan 141, they could be broken by hand at one vulnerably thin corner. In this I conceive that the trial court misapprehended the legal effect of Hanus’ testimony; and that, in Bison’s action for the agreed purchase price and for wrongful termination of the contract by Prohaska, the design defect was irrelevant. Evidence of the design defect should have been excluded upon a proper objection, and the evidence cannot lawfully be given the effect of avoiding Prohaska’s affirmative defenses that the locks were not as warranted. Despite the absence of a relevancy objection to Hanus’ testimony concerning the design defect, which prevents our holding it improper on that ground, the legal effect of that testimony to support the judgment is a matter of law. Cormier v. Williams, 148 Fla. 201, 4 So.2d 525 (1941).
Were this an action by Prohaska for damages on account of the failure of the locks in use by customers, and for Prohaska’s consequent loss of sales, the existence of a design defect would be pertinent to the issue of why the locks failed. One who sells substandard seed that fails to produce as warranted is liable for the buyer’s loss; and, as the buyer may show that he properly planted, watered, and cultivated the seed and its growth, the seller may show the contrary. Vaughan’s Seed Store v. Stringfellow, 56 Fla. 708, 726-27, 48 So. 410, 416 (1909). But if the buyer properly rejects the seed and returns it as nonconforming, the seller could hardly be heard to contend that he should be paid anyway because the buyer was incompetent to produce a crop from good seed, or that a drought that year would have doomed the crop anyway. Similarly, the claim tried here was Bison’s claim for the purchase price of locks delivered and for damages attending Prohaska’s termination of the remaining contract. Prohaska’s prior counterclaim had been withdrawn. His defense was simply that, as the locks delivered were not as warranted, but were degraded in molding below acceptable standards, he should not have to pay for them, and he was justified in returning the locks and terminating the remaining contract.
Assuming timely and proper rejection and termination by Prohaska, the design defect did not obliterate his defense. Bison’s duty was to furnish locks molded with acceptable material and workmanship and to Prohaska’s specifications and design. The risk of a design defect was Prohaska’s risk, to be sure; but it was a risk he would encounter in the marketplace, not one that would excuse Bison’s nonperformance and entitle Bison to recover the price of the nonconforming products.
*800 The timeliness and propriety of Prohas-ka’s rejection of the shipment and his termination of the contract are governed by Sections 672.601 et seq., Florida Statutes (1977). Factual issues concerning that defense yet remain. Those issues, and the issue made by Hanus’ testimony that there was no defect of material and workmanship, prevent entry of a judgment for Pro-haska.
I therefore concur, for the reasons stated, in the court’s decision to reverse Bison’s judgment and remand the case for a new trial.